EUGENE BROOKINS,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    Civil No. 11-784
                                    )
DANIEL CUIFFI and                   )
BOROUGH of WILKINSBURG,             )
                                    )
          Defendants.               )


## REPORT & RECOMMENDATION


I.   Recommendation

        Presently before the Court is Defendants', Daniel
Cuiffi's ("Cuiffi") and Borough of Wilkinsburg's ("Wilkinsburg")
(or, collectively, "defendants") motion to dismiss (Doc. # 15)
the amended complaint filed by the Plaintiff, Eugene Brookins
("Brookins") (Doc. # 13).   For the reasons that follow, it is
respectfully recommended that the motion be granted in part and
denied in part.

I.   Report

     A.   Factual and Procedural History

        On or about May 23, 2006, Brookins's former step-
daughter, Essence McKamey, now an adult, claimed that Brookins
had sexually assaulted her as a child.   When Brookins was
questioned about the claims by Cuiffi, a Wilkinsburg police

sergeant, he provided the officer with the following information related to McKamey's credibility:

A. The fact that the Plaintiff could not have committed the acts of which he was accused because the Plaintiff no longer lived with the Ms. McKamey or her mother, Felice Griffin (Plaintiff's ex-wife) during almost the entire time that Ms. McKamey claimed to have been sexually abused;

B. That, five days before Ms. McKamey made these claims, Plaintiff had taken steps to have child support payments to Ms. Griffin (for the couple's son, [K. B.]) discontinued in light of the fact that [K.B.] had been living with the Plaintiff for a considerable period of time while Ms. Griffin continued to accept child support payments from the Plaintiff;

C. That, from the time Plaintiff moved out of his previous marital residence and Ms. McKamey's childhood residence, almost continuously thereafter, Ms. McKamey was a frequent, voluntary visitor to the Plaintiff's residence;

D. That, from the time Plaintiff moved out of his previous marital residence and Ms. McKamey's childhood residence, almost continuously thereafter, the Plaintiff was a frequent guest at Ms. McKamey's adult residence, invited there by Ms. McKamey;

E. That, from the time Ms. McKamey gave birth to a child in or about 2003 to within days of making the claims against the Plaintiff, Ms. McKamey brought her child into the Plaintiff's presence. In fact, on numerous occasions, Ms. McKamey arranged for the Plaintiff to babysit Ms. McKamey's child, so that on numerous occasions the Plaintiff was left alone with the child for several hours at a time.

F. That in May, 2006, several days before Ms. McKamey made the subject allegations, Ms. McKamey, along with her child and her boyfriend, had voluntarily visited with the Plaintiff. At that time, the Plaintiff witnessed Ms. McKamey selling illegal drugs to her older brother. This illegal act occurred at the home of and was witnessed by Plaintiff's ex-wife and Ms. McKamey's mother, Ms. Griffin. After witnessing this act, Plaintiff threatened Ms. McKamey that if she ever brought drugs around [K.B.] (Plaintiff's son and Ms. McKamey's younger brother) she would not be permitted back to Plaintiff's home.

G. Other facts, which together with the foregoing, cast extreme doubt upon the claims made by and the credibility of Essence McKamey regarding the Plaintiff.

Am. Comp. ¶11 A-G.

On or about August 1, 2006, Cuiffi took a statement from Brookins's minor son, K.B., while he was in custody on an unrelated matter. Brookins contends that the statement included evidence against him based upon false claims and that Cuiffi was aware of certain circumstances that tainted K.B.'s reliability:

A. That [K.B.] had been placed into juvenile custody on the strength of allegations made against him by his mother, Felice Griffin. Accordingly, the Defendant knew that [K.B.] had reason to fear his mother, and therefore that Ms. Griffin had considerable influence over [K.B.]; and

B. That Felice Griffin and Essence McKamey had visited with [K.B.] shortly before [K.B.] gave a statement purportedly implicating the Plaintiff in the conduct alleged by Ms. McKamey.

3

Id. at ¶12 A, B.  Although Cuiffi suspected that K.B. had been coached to make allegations against Brookins, Cuiffi accepted the statement without further investigation of its truthfulness. The amended complaint avers that, in addition to neglecting to question either Brookins or his fiancée, the police officer's investigation of K.B.'s allegations was deficient because he:

> A.   Failed  to  properly  and/or  thoroughly question the alleged victim as to the motives she  may  have  to  distort  the  truth  and specifically address Plaintiff's proof that such incidents could not have occurred;
>
> B.   Failed  to  properly  and/or  thoroughly question the alleged victim mother in light of Plaintiff's statement to determine whether she exerted an improper influence on her daughter  regarding  the  making  of  these claims, including to determine what, if any, motives she had to harm the Plaintiff, and what, if any, steps she took to do so;
>
> C. Interview other individuals who may have had knowledge regarding the alleged victim's motives and/or actions;
>
> D. Examine documentary and/or other evidence which would tend to cast doubt on the claims of the alleged victim and/or her mother;
>
> E. Otherwise take such actions as would a reasonable and prudent police officer with the rank of Sergeant under the circumstances before bringing these charges against the Plaintiff.

Id. at ¶14 A-E.

On August 24, 2006, Brookins was arrested and charged with Rape By Forcible Compulsion, Rape By Threat of Forcible

Compulsion, Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault of a Child, Statutory Rape, Corruption of Minors, Simple Assault, Terroristic Threats, and Indecent Assault. At the preliminary hearing, the charges of Rape by Forcible Compulsion and Statutory Rape were withdrawn. The prosecution subsequently sought a number of requests for continuances of the criminal trial necessitated by the representations of the accuser, McKamey, that she was hospitalized and suffering from cancer. However, when McKamey's medical records were subpoenaed, they revealed that she was never hospitalized during the subject time period and did not have cancer at any relevant time.

On July 29, 2009, upon motion of the defense, and with the consent of the assistant district attorney, the remaining charges against Brookins were dismissed per Rule 600 of the Pennsylvania Rules of Criminal Procedure.[1]

---

[1] The standard for adjudicating a Rule 12(b)(6) motion to dismiss requires courts to read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. However, courts are not obligated "to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice." See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)." Johnson v. Bengel, No. CIV A 06-1284, 2006 WL 3843557, at *3 (W.D.Pa. December 14, 2006).

Although the amended complaint alleges that

On June 13, 2011, Brookins filed a civil rights action pursuant to 42 U.S.C. § 1983 seeking redress for alleged violations of the Fourth Amendment related to his arrest and seizure (count one), and for the malicious prosecution of the criminal charges filed against him (count two), and for intentional infliction of emotional distress under Pennsylvania law (count three). Defendants filed a motion to dismiss; in response, Brookins filed both an amended complaint and a response to the motion. After determining that the allegations set forth in the amended complaint either mooted or resolved the motion to dismiss, defendants were ordered to respond to the amended complaint (Doc. # 14). On December 20, 2011, defendants filed a motion to dismiss the amended complaint (Doc. # 15).

B. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a

the charges were nolle prossed upon motion of the prosecution, Exhibit A attached to Plaintiff's Brief in Response to the Motion to Dismiss makes clear that the charges were dismissed by operation of law pursuant to Pa. R Crim. P. 600.

plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

    C. <u>Discussion</u>

    1. <u>Statute of Limitations</u>

Defendants initially argue that counts one and three of the amended complaint are barred by the statute of limitations.

42 U.S.C. §§ 1983 does not contain a specific federal statute of limitations period for filing civil rights lawsuits. Instead, the limitations period for actions brought under this statute is determined by state law. Section 1983 claims are

classified as personal injury claims and federal courts must therefore borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. Wilson v. Garcia, 471 U.S. 261, 275-76, (1985). Pennsylvania subjects personal injury actions to a two-year limitations period. 42 Pa. C. S. § 5524; see also Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993) (Pennsylvania's two-year statute of limitations applies to claims for violations of constitutional rights brought pursuant to 42 U.S.C. § 1983).

Federal law, however, governs the date of accrual for claims brought under section 1983 and dictates that the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. Gibson v. Superintendent of New Jersey Department of Law and Public Safety, 411 F.3d 427, 435 (3d Cir. 2005) (quoting Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)). A cause of action for false arrest accrues on the date the claimant becomes detained pursuant to legal process. Wallace v. Kato, 549 U.S. 384, 389 (2007).

Brookins filed his complaint on June 13, 2011, claiming injuries resulting from his arrest and seizure on August 24, 2006 and from the prosecution of the resulting

criminal charges that terminated on July 29, 2009.[2] While plaintiff contends that count one does not purport to allege a false arrest claim, it is undisputed that its paragraphs contest, in some regard, the constitutionality of his arrest and seizure. These claims thus accrued on the date of his arrest[3] which occurred nearly four years prior to the filing of the complaint. It is, therefore, respectfully recommended that count one of the amended complaint be dismissed as time-barred.

Defendants also maintain that Brookins's state law claim for intentional infliction of emotional distress is untimely. If Brookins had alleged that defendants' tortious misconduct occurred solely in the context of his arrest and seizure, the Court would agree. However, Brookins has also averred that he suffered emotional distress associated with the prosecution of the criminal charges brought against him, events occurring within the limitations period. For this reason, it is respectfully recommended that the claim for intentional infliction of emotional distress be dismissed as untimely as to

---

[2] Defendants do not advance a statute of limitations defense as to the malicious prosecution count.

[3] The amended complaint does not include any information concerning events occurring after Brookins's arrest. Plaintiff simply pleads that, on an unspecified date, a preliminary hearing was held where certain of the criminal charges were withdrawn. Am Comp. ¶ 18.

injuries resulting from Brookins's arrest and seizure; however, the allegations related to injuries arising from the prosecution of the criminal charges are timely.

## 2. Malicious Prosecution

To prove a Section 1983 malicious prosecution claim, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3rd Cir. 2003).

Defendants claim that Brookins has not asserted a plausible malicious prosecution claim because 1) he cannot show that the criminal proceedings terminated in his favor; 2) he has not asserted facts illustrating that the defendants acted maliciously or for a purposes other than bringing the plaintiff to justice; and, 3) probable cause existed for plaintiff's arrest.

### a. Favorable Termination

For purposes of malicious prosecution, criminal proceedings end in a plaintiff's favor by;

> (a) a discharge by a magistrate at a preliminary hearing; (b) the refusal of a

10

> grand jury to indict; (c) the formal
> abandonment of the proceedings by the public
> prosecutor; (d) the quashing of an indictment
> or information; (e) an acquittal; or (f) a
> final order in favor of the accused by a
> trial or appellate court.

Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (citing Restatement (Second) of Torts § 659 (1976)). Although "'a grant of nolle prosequi'" - the public prosecutor's formal abandonment of criminal proceedings - "'can be sufficient to satisfy the favorable termination requirement for malicious prosecution, . . . not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably.'" Id. at 383 (quoting Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir.1996)). "A [nolle prosequi] signifies a termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused." Donahue, 280 F.3d at 383 (internal quotation omitted). While "'[a]ctual innocence is not required for a common law favorable termination,' the termination must at least be indicative of . . . innocence." Morris v. Verniero, No. 08-4145, 2011 WL 6057860, at *2 (3d Cir. December 6, 2011) (quoting Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996)).

The present charges were not dismissed after a Pa. R. Crim. P. 585 nolle prosequi motion by the prosecution, but, instead, upon a defense motion pursuant to the Pa. R. Crim. P.

600 speedy trail rule; nonetheless, the legal precept that the order dismissing the criminal charges must indicate the defendant's innocence remains applicable. Defendants thus urge that, because the underlying criminal prosecution was dismissed on purely procedural grounds following a motion by the defense, it cannot be concluded that the termination signified that the accused was innocent.

While dismissal of a criminal prosecution by operation of a speedy trial rule would not, in and of itself, suggest innocence, Brookins has alleged additional circumstances that could be indicative of his guiltlessness. According to the amended complaint, the prosecution sought a number of continuances in this matter necessitated by the complaining witness's, Essence McKamey's, representation that she was not available for trial because she had a serious illness. It was eventually revealed that McKamey had fabricated the reason for her unavailability.

Based on these allegations, it is plausible that the prosecution, faced with an accuser who created an elaborate lie to avoid testifying at trial, agreed to dismissal of the charges on speedy trial grounds because it longer believed McKamey was credible. Brookins, therefore, at this stage of the proceedings, has alleged sufficient facts supporting an inference that the criminal prosecution terminated in his favor.

b.  <u>Malicious Intent and Probable Cause for Arrest</u>

Defendants also claim that Brookins has not alleged any facts showing that they acted maliciously or for any purpose other than to bring the plaintiff to justice or that probable cause for existed for his arrest.

"Actual malice in the context of malicious prosecution claims is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." <u>Lee v. Mihalich</u>, 847 F.2d 66, 70 (3d Cir. 1988), abrogated on other grounds, <u>Albright v. Oliver</u>, 510 U.S. 266 (1994). Further, "[m]alice may be inferred from the absence of probable cause." <u>Lippay v. Christos,</u> 996 F.2d 1490, 1502 (3d Cir. 1993) (applying Pennsylvania law). Thus, if it is determined that Cuiffi did not have probable cause to arrest Brookins, willful misconduct could be inferred from the plaintiff's prosecution on the resulting charges. <u>See Brockington v. City of Philadelphia</u>, 354 F.Supp.2d 563, 572 (E.D.Pa. 2005)(when all reasonable inferences concerning facts supporting probable cause are drawn in favor of plaintiff, one can infer that police officer brought about prosecution maliciously knowing that there was no probable cause for arrest or prosecution).

According to the defendants, the facts known to Officer Cuiffi at the time of the arrest, i.e., McKamey's

accusations of sexual abuse, corroborated by the statement from her son, K.B., provided sufficient probable cause for the arrest. Brookins counters that because Cuiffi knew that the credibility of the complaining witness was dubious and K.B.'s statement was coached by his mother, the arrest was ill-motivated and probable cause did not exist.

"Probable cause is a relatively low standard for a defendant to meet." Meising v. Borough of Oakmont, Civil Action No. 07-0534, 2008 WL 4425850, at *4 (W.D.Pa. September 29, 2008). Probable cause to arrest exists when "'the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law . . . ." Merkle v. Upper Dublin School District, 211 F.3d 782, 790 (3d Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228, (1991)). While "[p]robable cause to arrest requires more than mere suspicion . . . it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Moreover, a police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause . . . ." Merkle, 211 F.3d at 790, n. 8. A credible report by a witness, or the victim, can be enough to establish probable cause. See Miller v. County

of Allegheny, No.05-733, 2006 WL 3332809 at *5 (W.D.Pa. November 16, 2006) (officer had probable cause to make arrest based on victim's report of sexual assault by jail guard.

In Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) the Court of Appeals for the Third Circuit addressed whether a positive identification by the victim is sufficient by itself to establish probable cause.  The Court stated:

> While we agree that a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause, this qualified precept cannot be rendered absolute. Independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist. Each case must therefore be examined on its facts.

Id. at 790.

Brookins has pled that the factual basis for his arrest were the statements of Ms. McKamey and her son.  The above cited cases instruct that assessment of these witnesses' reliability is crucial to the probable cause inquiry.  Regarding McKamey's believability, Brookins has alleged Cuiffi knew that: McKamey lived with him only sporadically during the time the alleged abuse occurred; he had recently taken steps to stop child support payments for K.B. to McKamey's mother; McKamey was a frequent, voluntary visitor to his residence; McKamey frequently invited Brookins to her adult residence; McKamey

brought her child to Brookins's residence and arranged for him to babysit the child on numerous occasions; several days before McKamey accused him, Brookins witnessed her selling drugs to her older brother; and, Brookins told McKamey that if she brought drugs around K.B. she would not be permitted in Brookins's house. As regards K.B.'s statement, Brookins contends that Cuiffi was aware that K.B. was in juvenile custody on the strength of allegations against him by Griffin, that K.B. feared his mother, that Griffin exerted considerable influence over K.B., and, that Griffin and McKamey visited K.B. shortly before he gave his statement against Brookins. Additionally, Brookins avers that Cuiffi suspected that K.B. had been instructed by his mother to issue a statement against his father.

At this stage of the proceeding, the facts alleged by Brookins raise a question as to the existence of probable cause for his arrest. First, the affidavit of probable cause is not a part of the record so its contents cannot be scrutinized; second, Officer Cuiffi knew of circumstances that tainted McKamey's credibility; and, third, Cuiffi suspected that K.B.'s statement was coached by the accuser and his mother. Accepting these allegations as true, the sufficiency of probable cause for the arrest is a question properly left for a jury. See Montogomery, 159 F.3d at 124 (question of probable cause is one for jury, unless, when accepting all plaintiff's allegations as

16

true, no reasonable jury could find lack of probable cause).

Having determined that there is a question of whether Cuiffi had probable cause for Brookins's arrest, it is plausible that Cuiffi doubted the propriety of the prosecution, particularly because he had information concerning the suspected veracity of the witnesses' statements. Therefore, under the Twombly/Iqbal standard, Brookins has alleged sufficient facts to satisfy the malicious intent requirement. For these reasons, it is respectfully recommended that the motion to dismiss the malicious prosecution claim be denied.

### 3. Qualified Immunity

Cuiffi also argues that Brookins's civil rights claims against him must be dismissed because he is entitled to the defense of qualified immunity.

Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). Qualified immunity balances competing interests — the need to hold police officers answerable if their power is exercised recklessly and the need to protect those officials from liability when they perform

their duties responsibly.  This protection applies regardless of whether the police officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231 (2009)(citation omitted).

Determining whether qualified immunity applies is a two-step process:  "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the court finds that a defendant violated a constitutional or statutory right, then "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" Id. (citation omitted).  If no constitutional right has been violated, the inquiry concerning qualified immunity ends. Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005).

As discussed above, viewing the facts favorably to plaintiff, Cuiffi arrested Brookins on the basis of questionable probable cause.  This is not, as defendants claim, similar to Mitchell v. Obenski, 134 Fed. App'x 548, 551 (3d Cir. 2005) wherein the court granted qualified immunity to a police officer when the arrest was based upon a credible consistent account of an assault and an arrest warrant signed by a District

Magistrate. Nor does Brookins allege that Cuiffi made a mistake. Rather, his pleadings suggest that Cuiffi ignored information impugning the credibility of the both the complaining and corroborating witness and authored an affidavit of probable cause with reckless disregard for the truth. The Court must accept Brookins's characterization of Cuiffi's actions; therefore, Cuiffi is entitled to qualified immunity only if Brookins's Fourth Amendment right to be free from malicious prosecution was not clearly established.

"[A] right is 'clearly established' when the contours of the right are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" McGreevy v. Stroup, 413 F.3d 359, 366 (3d Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Here, a reasonable officer would understand that the arrest and resulting prosecution of Brookins with arguable probable cause violated the Fourth Amendment and resulted in a malicious prosecution. Officer Cuiffi, therefore, is not entitled to qualified immunity at this stage and it is recommended that the motion to dismiss reasoned by application of this doctrine be denied.

### 4. Pennsylvania Political Subdivision Tort Claims Act

Defendants' next argument is that Brookins's state law claim of intentional infliction of emotional distress is barred by operation of the Pennsylvania Political Subdivision Tort

Claims Act, 42 Pa. C. S. §§ 8541, et seq. ("PSTCA"). Under the PSTCA, a local agency and its employees are immune from claims of tortious action, subject to two exceptions. Section 8542 allows recovery against local agencies and their employees for negligent acts in eight categories - (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and, (8) care, custody or control of animals. 42 Pa.C.S. § 8542(b).

Additionally, under section 8550, a government employee is not protected by immunity if the act "constituted a crime, actual fraud, actual malice or willful misconduct." "Willful misconduct is equated with an intentional tort in Pennsylvania, and is defined as conduct through which the tortfeasor desired to achieve the result that followed the conduct or was at least aware that the result was substantially certain to follow." Roberts v. Toal, No. CIV. A. 94-608, 1995 WL 51680, at * 3 (E.D.Pa. February 8, 1995). Subsection 8550, however, "jettisons only those immunities held by municipal **employees** and only then for forms of willful misconduct. This section does not, however, abrogate the general retention of **municipal** immunity." Gines by Gines v. Bailey, Civ. A. No. 92-4170, 1992 WL 394512, at *7 (E.D.Pa. December 29, 1992) (emphasis in original).

Regarding defendant Wilkinsburg, Brookins's claim of intentional infliction of emotional distress does not fall within any of the eight enumerated exceptions to political subdivision immunity. Therefore, it is respectfully recommended that the motion to dismiss the state law claim against Wilkinsburg be granted.

A similar conclusion concerning Cuiffi's immunity, however, is not warranted. Employee defendants will be stripped of this immunity defense if the act that injured the plaintiff constituted "willful misconduct." Id. As discussed above, at this stage of the proceedings, it cannot be determined that Brookins will be unable to establish either that Cuiffi exceeded his authority or that his actions constituted willful misconduct so as to defeat immunity; thus, it is recommended that motion to dismiss the state law claim as to Cuiffi be denied.

5. Municipal Liability

Defendants next contend that Brookins cannot maintain his Section 1983 claim against Wilkinsburg. Brookins has alleged that Wilkinsburg did not properly train/supervise its police officers regarding criminal investigations of child molestation claims, including questioning all potential witnesses and proper procedure regarding criminal investigations, specifically requiring officers to explore inconsistencies in statements underlying arrests and thoroughly

investigating any defense being offered by the accused. Brookins also claims that Wilkinsburg failed to properly supervise its officers because it did not have a policy or procedure in place to review criminal complaints prior to pressing charges.

To hold a government entity liable under section 1983, a plaintiff must prove that the municipality itself supported the violation of rights alleged. _Monell v. Department of Social Services of City of New York_, 436 U.S. 658, 692-95 (1978). "Thus, Section 1983 liability attaches to a municipality only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" _Andrews v. City of Philadelphia_, 895 F.2d 1469, 1480 (3d Cir. (1990)(quoting _Monell_ 436 U.S. at 694). In addition, a municipality is not liable under § 1983 unless its policy or custom is the "moving force" behind the constitutional violation. _Sanford v. Stiles_, 456 F.3d 298, 314 (3d Cir. 2006) (citations omitted). "A policy is made 'when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'" _Swift v. McKeesport Housing Authority_, 726 F.Supp.2d 559, 572 (W. D. Pa. 2010)(quoting _Andrews_, 895 F.2d at 1480)(internal quotation omitted). "A custom is a practice "so

permanent and well-settled as to virtually constitute law." Id. (citations omitted).

For municipal liability to attach via a failure to train theory, the governing body's failure to train its police officers must reflect a deliberate or conscious choice by the municipality such that one could call it a policy or custom. Doe v. Luzerne County, 660 F.3d 169, 179 (3d Cir. 2011). A Monell claim could also exist "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Where a municipality's failure to train evinces a "deliberate indifference" to the rights of the those interacting with police officers, such a deficiency in the training can be thought of as a municipal custom or policy actionable under section 1983. Id. at 389. Furthermore, a failure to train amounts to deliberate indifference when the inadequate training has caused a pattern of violations. Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010).

Here, Brookins does not assert facts sufficient to support his claim of municipal liability. Rather, his amended complaint makes conclusory allegations that Wilkinsburg has not trained its police officers to conduct thorough investigations or and/or lacks a competent review procedure before criminal charges are filed. The amended complaint lacks any specificity

concerning the particular behavior, time, place, and persons responsible for any official policy or custom sanctioning the police officers' conduct related to criminal investigations, see Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), nor does it specifically describe the inadequacy of training programs for the police officers. The amended complaint is likewise silent on any pattern of deficient behavior concerning police officers' investigations. Accordingly, the facts as pleaded do not state a plausible claim for relief for municipal liability, and it is respectfully recommended that the motion to dismiss as to Wilkinsburg be granted.

### 6. Punitive Damages

Punitive damages are not recoverable from a municipality or from an individual sued in his or her official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-69 (1981) (holding municipality immune from punitive damages under § 1983 claim); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (punitive damages cannot be recovered from officials in their official capacities). Plaintiff concedes that his claim for punitive damages is not cognizable against Wilkinsburg. Therefore, it is recommended that defendants' motion be granted to the extent Brookins requests punitive damages against the township and Cuiffi, in his official capacity. As to the punitive damages claim against Cuiffi in

24

his individual capacity, it is recommended that the motion be denied.

III.  <u>Conclusion</u>

For the reasons stated above, it is respectfully recommended that defendants' motion to dismiss be granted as to count one of the complaint, the component of the intentional infliction of emotion distress claim related to Brookins's arrest and seizure, and as to all claims against Wilkinsburg.

It is respectfully recommended that the motion be denied as to Cuiffi's liability for malicious prosecution (count two), for intentional infliction of emotion distress resulting from the malicious prosecution (count three), for entitlement to qualified immunity and for the claim for punitive damages in Cuiffi's individual capacity.


Dated:  March 19, 2012          Respectfully submitted,

                                <u>s/Robert C. Mitchell</u>
                                Robert C. Mitchell
                                United States Magistrate Judge